## BROWN v. TODD.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

MASTER AND SERVANT—APPLIANCES—NEGLIGENCE.

> An employer instructed his employés to build horses for a scaffold, to be used by the workmen in the house he was constructing, from certain particular material, of which there was just enough for that purpose. An employé was injured by the breaking of a horse made of defective material, the defect not being apparent to an ordinary observer. The employé took no part in selecting the material or putting it together. *Held*, that the employer's negligence in failing to afford the employé a safe place to work was the cause of the injury.

Appeal from trial term, New York county.

Action by Joseph W. Brown against John R. Todd. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles J. Hardy, for appellant.

John M. Gardner, for respondent.

PATTERSON, J.   On the trial of this cause there was a serious conflict of evidence as to every material fact except the defendant's employment of the plaintiff, the immediate cause of the accident which befell the latter, and the grave injuries he sustained in consequence thereof.   It is sought to visit responsibility for those injuries upon the defendant on the allegation that it was his personal negligence to which the accident is attributable.   An investigation of the record discloses that the verdict of the jury has necessarily established the following facts, viz.:   The defendant was the owner of certain premises in the city of New York upon which there was being erected for him a large building, which, on the 19th of June, 1896, was partially completed.   The plaintiff was a carpenter, and on the day mentioned, at about 8 o'clock in the morning, he went to the building, in company with one Springsteel, was there introduced to the defendant, and employed by him to assist in the carpentering work, and was immediately set to work on the fourth floor of the building in sawing boards into various lengths. The ceiling of the fourth floor was to be of boards tongued and grooved.   It was to be part of the plaintiff's work to assist in putting up the ceiling.   The distance from the floor to the ceiling was some 10 feet, and it was, therefore, necessary that a platform, scaffolding, or staging should be set up, upon which the carpenters might stand while working.   A scaffold consisting of five forms called "horses," on which planks were laid, was made or prepared by other employés of Todd, who may be called fellow servants of the plaintiff.   The plaintiff had no part whatever in the building of the scaffold, or the selection of the material, or putting it together, as the verdict of the jury establishes.   The horses were in the shape of trestles, with a long piece called a "header," at the sides of which, near each end, were nailed legs or supports, braced together; that being the ordinary mode of construction.   The headers were of hemlock wood. When the horses were completed, and ready for use, and the boards put upon them, the plaintiff was instructed to go upon the scaffold thus erected, and assist in putting in place some of the ceiling boards.   He did so, and stood immediately over one of the horses. It broke under his weight, and he fell to the floor, sustaining very grave injuries.   The cause of the breaking of the header of the horse over which he stood was that it was crossgrained, and improper for the use to which it was applied.   It was claimed by the defendant that the timber used for the header of the horse had been cut or sawed at one point, and there was a knot at another, and that an oblique fracture, which was disclosed upon an examination after the accident, proved that, and that the defect could have been discovered by a simple casual inspection; but the verdict of the jury again, on conflicting evidence, shows that the real cause was that stated by the plaintiff's witnesses, and that the condition of the header was not such as the defendant claimed.   Before the horses were constructed, the fellow servants of the plaintiff sought information from the defendant, Todd, and from his foreman, Valentine, as to material with which the scaffold should be constructed, and more particularly with reference to the horses.   On the fourth floor of

the building was lying material, which Todd directed the fellow servants of the plaintiff to use in constructing the horses. The witnesses for the plaintiff testify that they were expressly directed by the defendant to use that material. The case is not, therefore, one in which the fellow servants of the plaintiff were at liberty to make their own selection of material from lumber found in or about the premises, but they were directed by the defendant, according to some witnesses, and by Valentine, the superintendent or foreman, according to another witness, to use the particular material which was then lying on the floor near them.

It was the duty of the master to furnish a scaffolding for the men to stand on. It was his duty to furnish them with the material out of which that scaffold could be constructed. He took upon himself, in the present case, the responsibility of directing what material should be used, and his workmen were justified in using that material. There was no duty devolving upon them of selecting from a mass of material that which should be fit, appropriate, and safe. We are not called upon to consider in this case the subject of liability of an employer where a servant is injured partly through the negligence of the employer and partly through that of fellow servants, for here the proof accepted by the jury established that there was no more material, the use of which was directed by the defendant, than just enough to make the five headers for the five horses. That is the testimony of Springsteel and of Daly. There was no opportunity of selection, therefore, given to the fellow servants of the plaintiff. They were not required to separate and select good material from a mass. Regardless of other conditions, the proof is clear that the header timber was defective, improper, and unsafe for use; that its use was so ordered by the defendant; that there was nothing else to be used for the purpose; and that the defects were not apparent to an ordinary observer. The plaintiff was entitled to rely, under the circumstances, upon his employer furnishing him with a safe place in which to work. The duty the defendant owed to the plaintiff in that respect was not performed, and by reason of the negligence of the defendant the accident happened and the injuries were sustained.

The judgment and order appealed from should be affirmed, with costs. All concur.